UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANDON MONTGOMERY,

    Plaintiff,

v.                                                          Case No: 8:24-cv-1062-KKM-TGW

SEMINOLE HARD ROCK
DIGITAL, LLC,

    Defendant.
_____

## ORDER

    The Seminole Tribe of Florida moves to intervene in this putative class action under Federal Rule of Civil Procedure 24(a)(2). Mot. to Intervene (MTI) (Doc. 37). Plaintiff Brandon Montgomery opposes the motion. Resp. (Doc. 47). For the reasons below, the Tribe's motion is granted.

### I.    BACKGROUND

    Montgomery sues Seminole Hard Rock Digital, LLC (SHRD), for violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), §§ 501.201–501.23, Fla.

Stat., and he seeks certification of a class, Am Compl. (Doc. 30) ¶¶ 71–73, 92–114; *see also* Compl. (Doc. 1).[1]

The action focuses on SHRD's "No Regret First Bet" promotion on the app Hard Rock Bet, through which SHRD allegedly encouraged "users to make their first bets up to $100, with the promise of giving the money back if it doesn't win." Am. Compl. ¶ 57. Montgomery alleges that "SHRD deliberately did not communicate that users availing themselves of the . . . promotion would only be credited with a Bonus Bet." *Id.* ¶ 61. According to Montgomery, a player betting $100 of their own money at even odds could win $191—the initial bet plus the winnings less the house's cut. *Id.* ¶ 62. Yet he says that a player winning with a credited $100 Bonus Bet will receive only the winnings, not the value of the bet itself. *Id.* So "[o]nce the new user loses their initial bet, they are not in the same position as they were before placing their bet, in direct contrast to the advertising materials of SHRD." *Id.* ¶ 63. Montgomery contends that SHRD's advertisement of the "No Regret First Bet" promotion is misleading and violates FDUTPA. *Id.* ¶¶ 68–70, 108–14. SHRD has moved to dismiss the Amended Complaint. SHRD MTD (Doc. 46).

The Tribe moves to intervene as of right "for the limited purpose of filing [a] motion to dismiss." MTI at 1.

---

[1] Montgomery's amended complaint adds a count for declaratory relief that relates to the relationship between SHRD and the Tribe. *See* Am. Compl. ¶¶ 74–91; *see also* Resp. at 1 n.1.

2

## II.  LEGAL STANDARD

To intervene under Rule 24(a), a prospective intervenor must show (1) that the intervention application is timely; (2) that an interest exists relating to the property or transaction that is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represents the prospective intervenor's interests. *Davis v. Butts*, 290 F.3d 1297, 1300 (11th Cir. 2002); *see* FED. R. CIV. P. 24(a). The Court "must permit anyone" who meets these standards to intervene. FED. R. CIV. P. 24(a)(2); *see Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).

## III.  ANALYSIS

The Tribe makes a prima facie showing that its motion is timely and that it has an interest in the transaction at issue that may be impaired by the action's disposition. *See* MTI at 4–7.[2] Montgomery challenges only the Tribe's argument that SHRD does not adequately protect the Tribe's interests.

---

[2] The Tribe contends that it has three principal interests that the action may affect. First, the Tribe claims that it is the real party in interest and that a favorable judgment would subject it to substantial damages and damage its business reputation. MTI at 6–7. Second, the Tribe says that Montgomery's action threatens its sovereign interests by seeking to circumvent the limited waiver of sovereign immunity that the Tribe agreed to in its 2021 gaming compact with the State of Florida. *Id.* Third, the Tribe argues that it has an interest in the validity of its vendor agreement with SHRD, which Montgomery challenges in his declaratory judgment count. *Id.* at 7.

A putative intervenor must show that the existing parties do not adequately represent its interests. FED. R. CIV. P. 24(a)(2). A party seeking the same objectives as the intervenor is presumed to be an adequate representative. *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004). A would-be intervenor may rebut this weak presumption by showing some contrary evidence. *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007). If the intervenor does so, "the court returns to the general rule that adequate representation exists 'if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed interven[o]r, and if the representative does not fail in fulfillment of his duty.' " *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999) (quoting *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)). The burden on the putative intervenor is "minimal"; all that is required is a showing that the representation " 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017).

The Tribe argues that SHRD's representation of the Tribe's interests is inadequate for two main reasons. First, the Tribe contends that it is the proper defendant because SHRD has no legal interest in the Tribe's sports-betting business and "the Tribe is legally responsible for the conduct at issue and otherwise has total authority and control over the

4

website and apps offering the Tribe's sports betting games" under the Tribe's compact with the State of Florida. MTI at 8–10. Second, the Tribe maintains that as a sovereign entity, the Tribe has interests not shared by entities like SHRD in defending its sovereign immunity and its right to conduct gaming operations. *Id.* at 10–11.

The Tribe is right. While SHRD and the Tribe have a shared interest in avoiding liability in this action, the Tribe has additional interests in defending its ongoing right to conduct gaming on its lands and the scope of its sovereign immunity waiver. Both of those issues are addressed in the Tribe's 2021 Compact with the State of Florida, which the Tribe must abide by to offer sports betting games on its lands. *See* 2021 Gaming Compact Between the Seminole Tribe of Florida and the State of Florida § V.D.9 (Apr. 23, 2021) ("The Tribe shall assure that advertising and marketing . . . makes no false or misleading claims."), https://perma.cc/6TWY-WENF; *id.* § VI.D.5 (partially waiving sovereign immunity); 86 Fed. Reg. 44,037 (Aug. 11, 2021) (approving compact); *see also* 25 U.S.C. § 2710(d)(1)(C) (providing that Class III gaming on Indian lands is lawful only if "conducted in conformance with a Tribal-State compact"); 25 C.F.R. § 502.4(c) (defining Class III gaming to include "sports betting"). SHRD is not a party to the compact with Florida. Montgomery has not shown that SHRD has a right to offer sports betting in Florida independent of the Tribe. Nor has he shown that SHRD has the same sovereign interest in abiding by the compact—and maintaining the right to offer sports betting—that

the Tribe does. And SHRD, as a limited liability company, possesses no innate sovereign immunity and thus does not have the same interest as the Tribe in policing the scope of the Tribe's sovereign immunity waiver. As such, the Tribe has met the "minimal" burden of showing that SHRD "may be" an inadequate representative of its interests. *Trbovich*, 404 U.S. at 538 n.10.[3]

## IV. CONCLUSION

Accordingly, the Seminole Tribe of Florida's Motion to Intervene (Doc. 37) is **GRANTED**.

**ORDERED** in Tampa, Florida, on February 10, 2025.

Kathryn Kimball Mizelle
United States District Judge

---

[3] *See Gameroom Superstores, LLC v. Brodsky*, No. 8:13-CV-1528-T-30AEP, 2013 WL 3701909, at *2 (M.D. Fla. July 12, 2013) ("Although the Seminole Tribe and the Florida State Attorney share an interest in arguing the constitutionality of the Florida statutes at issue in this case, the Seminole Tribe has the *additional* unrepresented interest of protecting its exclusive rights to casino-style gaming."); *Conservancy of Sw. Fla. v. U.S. Fish & Wildlife Serv.*, No. 2:10-CV-106-FTM-SPC, 2010 WL 2776840, at *3 (M.D. Fla. July 14, 2010) ("[T]he Seminole Tribe, as a dependent sovereign Indian nation, has legally recognized rights and interests that only it possesses and that only the Seminole Tribe and no other parties to the litigation can adequately protect and represent in this lawsuit. Disposition of this lawsuit could impair their ability to protect those interests.").